The next case on our morning docket is Leach v. Dave. Mr. G.O. Coletto, is that right? Yes, sir. And Mr. Bode. Counsel, you ready? May I please report? Your Honor, my name is Steve G.O. Coletto, and I represent the plaintiff, Stacey Leach, today. And I will have, I hope to be actually, maybe the quickest oral argument that you're going to hear today and keep everything on schedule. This case arose out of an auto accident, a head-on collision on Highway 15 in Belleville. In the record, although not in the appendix and everything, but in the court's record, is the settlements of Stacey Leach's physical injuries, and it's all spelled out in there, and that was all resolved. But what's left for the trial on this appeal is actually the injuries involving the loss of her 14-week-old baby. And so that's what we did go to trial over. The simple issue in this case in layman's terms is what is the value of that relationship between a parent and a child, in this case a mother and daughter, the loss of that value, and whether the jury in this case and whether there's a clear abuse of discretion when they awarded $23,300. In my brief, and the purpose of what I have spelled out in the brief is to show you that there is a precedence for what I'm asking for today, that this door analogy, again, has been unlocked before. This door is open, and that on the other side of this door is not some horrible abyss, re-evaluating jury decisions or this slippery slope that you're going to go down into. So I propose all that as to I'm not trying to break new ground here. These cases in these types of situations are heavily factually dependent, and by giving me what I'm asking for today, I don't think we're going to have a slippery slope of, okay, now suddenly everybody who doesn't like their jury verdict awards is now coming back to court. I think when you look at these wrongful death cases, it's highly dependent on every detail of the facts. So that's why I think my brief is more of showing you that this is possible rather than the cases being similar in factually as the reasons to give me what I'm asking for today. And what I am asking for is to make an independent decision from the jury, although I guess technically it was from the judge, legally from the judge, who did not grant the motion for the trial. But honestly, my angst here is with the jury's decision, it's not so much the judge. I don't think that would be normal or common for a judge to award that or reverse that jury's verdict. I think right away the jury got it wrong in this case. I think they were looking at the value of this case as being, well, what's a 14-week-old fetus worth? And that's just not the question here. $23,300, I mean, there were no medical bills involved here that's hard to come up with. How would they come up with that number? You know, it smacks of a compromise or of, you know, what's everybody think? We'll throw it in a pot, divide it by 12, and you get some odd number like $23,300. You carry it out over 53 years of my client's life, which is part of the jury instruction, and we're talking about this life relationship with their daughter being worth about $434 a year. But that's all it's worth. What they should have been looking at and what I asked the court to emphasize and focus on is the jury instruction 31.01A. And I have all the jury instructions, the pertinent ones spelled out on page 19 of the brief. And when you look at the jury instruction here that really describes a case like this, it talks about what a substantial pecuniary loss, and I understand substantial is going to be a matter of relative term to people, but it talks about the loss of the seed in society. And then in another jury instruction, 31.11, it describes and it gives the definition of society. And in the definition of society, and that's where this case is all about, it's each family member's continued existence, love, affection, care, attention, companionship, comfort, guidance, and protection. That's where they decided, the jury, that, well, all that stuff in 53 years is worth about $23,300, and I just find that offensive personally and abuse of discretion. Those intangible terms there, those aspects, if you will, are hard to put a dollar figure on, I understand. But that's, when I read the definition of loss of society, that's life relationships. That's what life is all about, you know, existence, love, affection. And isn't this what we all do for our child and what our parents did for us? You know, even if you didn't have a great childhood, or maybe you don't get along with your child who did, and maybe it was rough growing up, but this is what people strive for is to have these things through life, of why they do go to work, why they do pull themselves up every morning and keep trust. What should be the minimum amount? What's that? What should be the minimum amount? Of the value, the dollar value of this? Right, in this case. Well, I honestly don't know. That's the problem. It's one of those things where you know it when you see it. And I can't sit here and I'm not asking you to pick out a dollar amount. I guess it's easier to say. I'm just asking a question. It is very subjective. Yes, no doubt, no doubt. And our jurisprudence allows the jury to determine that, that's the fact. And I guess my answer to that is I don't know that I can tell you. I know what's wrong, and $23,000 is, I think, ridiculous. But I couldn't sit here and say, okay, it needs to be in six figures. I mean, as a plaintiff's attorney, I guess I do want to hear that, but, you know, if we're just talking around the fire, you know, it is hard to pick a dollar amount. It's easier to say what's wrong or that's just ridiculous, $50 million, come on. Would $50,000 be ridiculous in your opinion? I think that would still be, yes, wrong. I think if it's $60,000. Would $60,000 be? Where is the threshold? I'm going to keep on asking. I think that would be here, I think, to me, $100,000, I guess. And maybe it's just because six figures is a mental milestone, you know, if you will. And it is hard. I can see that part. It's easier to say I know what's wrong rather than say I know what's right. But this is what people make sacrifices for. This is why people stay in their jobs, why they move, why they don't move, why they, okay, we're going to go to this school, you're going to go to that school, we're going to get you the best doctor care. All of that has to have, you know, some value more than $434 a year. You know, this is the stuff that we're talking about, this love, affection, care, between a parent and a child. It starts from the morning, you know, from the time in the morning when they wake up to the time you're tucking your child in the bedroom. On a larger scale, from the time your baby is born and you're putting diapers on them all the way until the end, 53 years later, where maybe it's the child that's with the mother on her deathbed in her final days. And that has to have how much value? Some people will tell you it's priceless. Well, there's no figure you can put on that. But I think there's those factors and those timeframes and everything in between, whether it's birthdays, weddings, vacations, et cetera, et cetera. That's what laws of society is all describing here. And it's not describing a 14-week-old fetus. It's describing and calls for a lifetime of a parent-child relationship. The facts in this case went unrebutted. Stacey Leach testified about her childhood history, her young adult history, her adult history, her prenatal care, her family network. All this reasonably would lead one to believe that the same was going to happen with her child and that she was going to have a loving family relationship with her child as well and that she was going to have a great mother-daughter relationship for 53 years. So based on this, I am asking that the court remand this for trial on this issue of damages. Thank you, Your Honor. Okay. What this case boils down to is simply did the plaintiff have a fair trial? If the plaintiff had a fair trial, then the verdict should not be against the manifest way of evidence unless there's some abuse that took place. In this case, this plaintiff had the fairest trial that could have possibly been had. I say that because she got every single bit of testimony into evidence, as you know, from the record. I did register three objections to some elements outside the presence of the jury, all of which were denied, so I got none of my objections granted. The plaintiff had the opportunity to tell the jury every single thing she wanted to say. As a matter of fact, even my opponent in his brief writes curiously, the juror is allowed to see DVDs of the ultrasound. Now, you might ask why I didn't object. The fact is that when you object in a wrongful death case, you just make the jury angry, and so I had to make judgment calls on what I objected to and what I didn't. In my judgment call, I did object to the ultrasound outside the presence of the jury, but not during the jury. I made no objections to anything during the jury, so that there would not even be a hint of any impropriety. Now, the reason I did all this was because at the very beginning of the case, when the opening statement was made, in fact, during Voyneter, during Voyneter, my opponent asked the jury to pledge allegiance, which was for that. Well, right away I knew that I had a case then where I was going to have to allow all the testimony in, because it would look like I'm addressing an argument for so much money they couldn't even comprehend it. But also at the beginning of the case, my opponent correctly stated that this was going to be a tough issue to decide because of the age. This is a 14-week fetus. And we know from the IPI instruction comments that age goes to the parent-child relationship. It is certainly not quantitative because any age can recover, but it is qualitative, meaning the amount of recovery depends upon the length of time it was a parent-child relationship. When you were able to get into evidence, facts like the mother was unmarried, she had two boyfriends, worked at a Wal-Mart grocery store, what relevance is that? Do poor people's children, are they worth less? No. In fact, there's instruction that says they're not worth less. How did you get that into evidence? Pardon? How did you get that into evidence? What's the relevance? The relevance was that the plaintiff's mother, whom I sometimes call grandmother, came in and instead of testifying about the effect of the loss of society on her child, she was testifying as to the plaintiff's own problems. The mother came in and said, my daughter, the plaintiff in here, has all these problems. She's an introvert where she used to be extroverted. She used to have a partner of her own, now she goes out. Now she does not go out. Therefore, the relevance of her having boyfriends is that she does. She is not introverted, and that was the only purpose. And if the court will just indulge me a second, a big issue in the case is, of course, the father not being there, but I did not bring that up at all. It was the opposing attorney who talked about father-daughter relationships, not I. But I had no objection to my testimony that she had friends. It went to the issue of her testimony that she no longer dreams so much that she can't go out. That's what the mother testified to. The mother, I thought, should not have been testifying to that. However, it did not hurt the case because there's no recovery for the mother being offered. But the fact is, though, that there is the malformation of jury and propriety, juror error, outside influence, instruction errors. No allegation of that here. Introduction of items that could have lowered this jury were not done by myself. The plaintiff herself kept talking about the fact she was on a social security disability, saying, and the fact that her medical bills were paid. The statement made to this court by opposing counsel is correct in that when the plaintiff testified, which the jury can determine the demeanor, she did not cry. Now the fact is, her mother cried. Well, maybe the jury didn't like the demeanor. But if you respect what I'm saying is that if there is a fair trial and there's nothing against the manifesto or the evidence, no allegation of error of any kind on my part, which there is no error, then I just don't know how a trial court would want that. This is why an appellate court would want to disturb a verdict. The trial court here did not want to disturb a verdict. Here's what happens. And I think this was being brought up during the questioning. If the appellate court starts second-guessing jurors and saying, what's too low? The next question is, what's too high? She could be on the other foot here. If my opponent asked for anything between $2 million and $20 million, now I conceived the verdict to be $20 million. I would have been here asking, it's too high. Wouldn't she be asking the same question, what is enough? No. And your answer would be to me, well, that's what a jury is supposed to determine based upon the evidence. And keep in mind, all the evidence went in with no objections. You decide. The problem with this court trying to set an amount is the very problem. There wasn't a request for an additive in this matter. Pardon? There wasn't a request for an additive. No, there was no request for an additive.  Would you think it would be appropriate to file a motion for an additive? Procedurally-wise, I mean, I know you object to that. Would not that be the proper way to address it? That would help. That would help. Rather than trying to have this court set artificial limits. Here's how this all gets started. This all gets started in a long case, a Fourth District case, that I believe was heard back in the 60s, where the trial court said that actually a $4,000 verdict, because there was a lot of special damages involved in there, was not enough. That was Justice Mills. But as noted in the dissent, two things happened in that case. Once you start setting the floor, then, as I think Justice Weber said, you go down a thin sheet of legal ice upon which to skate, because if $2,000 or $3,000 is not enough for a 10-year-old athlete, a good boy, then what is it? Then how much, then, do you award, depending upon the age of the person? How much do you award depending upon the year it was tried? Here's where the cases cited by the other side fail to have any influence or any precedential value here. When the two cases that are cited that reversed low jury verdicts in the trial courts, both of them in the Fourth District, they were decided before the Bullard case, which was decided in 1984. Both cases were tried. That's the Long and the Taylor case, I believe, or the Carter case, I think it is. Both were tried prior to 1984. In 1984, Bullard held that there could no longer be a presumption of loss of money value because of the child. So the only two cases cited that say that a jury verdict should be overturned because of inadequacy, first of all, the verdicts that were said to be too low actually contained special damages in addition to the award. But more importantly, before 1984, any case that was tried with a child had a presumption, a presumption there was a dollar loss because of what that child would bring to the family. And as the court in Bullard mentioned, there is simply no basis for presumption in today's society that a child brings money into the family. As a matter of fact, as set forth in Bullard and every case thereafter, the jury has now told them to reduce verdicts by the harmonic cost to rear a child. That was not present in the two cases cited by my opponent. But the fact is that if you start setting a floor, he wants you to set a floor, I guess, $100,000 for a 14-week fetus. All right, now does the next person come in with a 14-week-old fetus? Does the next person come in with a 14-week-old live child and say, well, if $100,000 is the floor for a 14-week fetus, I want $150,000? And does a person with a 1-year-old child say, I want $250,000? And does a person with a 10-year-old child say, I want $1 million? This process goes on and on when you set an artificial floor. Now, the only way this argument, or half the argument that is being made to set an artificial floor of $100,000 for a 14-week fetus, that path leads you to the logical conclusion that there should be no jury. Why would you need a jury if the appellate court is going to say, X is the lowest you can get for a fetus. Y is the lowest you can get for a 1-year-old, and on and on and on. And then you go from the top down. What about the other side that says, well, there's got to be a top? You go down. This is a slippery slope. Judge Weber was talking about his dissent in Long. One of the cases cited by my opponent. But I think we don't even have to worry about the Long in the Carter case because the Fourth District no longer has the problem with setting a floor on low jury verdicts because the instruction changed in 1984. So we haven't had any cases since 1984 setting aside low verdicts because now the jury is only allowed to presume loss of society. The jury cannot presume loss of money, loss of income that the child would have earned. I think that says a great deal about how this, why this verdict should stand. There's also Justice Weber, who I believe said what my opponent said in his dissent, but he says, quote, no amount of damages can stand this record. What is the fair amount of damage as far as wrong with W14 would be? Well, the judge, and I think everybody agrees, how can you put a dollar amount? He says there's no way you can put a dollar amount on a debt of anyone. It doesn't make you get a dollar amount. You cannot put a dollar amount on a debt. That's what juries are for. Tom Jefferson. Tom Jefferson said, I've got a quote here somewhere. Oh, he said, quote, common sense of 12 honest people gives the best chance of a just decision. And I think that's the position I'm taking here that the claimant was given a fair trial. All evidence was allowed. The jury heard the testimony. The jury saw the demeanor of the witnesses. The jury was given every instruction that led to the IPI that tells them what to award for. I don't believe there's any way anyone can say what a 14-week fetus versus what a 14-week fetus versus a 14-life child versus stillborn. There's all kinds of variables, and you simply, if you try to second guess, you are a jury. And there's just no precedent for doing that. The factors that the jury considers when they reach a verdict are the very ones that are set forth in the jury instructions. And they have the right to say that when the mother testified, she really didn't, she only spent a couple pages testifying about her loss. In fact, she made this statement, which I think pretty much sums up the problem that we have in the death case. And she says, quote, on page 50, it is hard, meaning to just talk about loss of society, because of the age, and all I can do is speculate. So even the plaintiff herself says all she can do is speculate as to what this had on her. I don't believe that the jury punished her in any way. $23,000 is a substantial amount of money, keeping in mind, by their own admission, no medical bills. She had insurance, and I'd say if you look at the testimony of the plaintiff, 90% is about herself. Not from the standpoint of loss of society, this child, but things that she wanted for herself. And that, I think, is what the jury based their determination, what the plaintiff testified to in her demeanor. Thank you, counsel. Andrew Rebeville. Thank you, Your Honor. I did look into the editor angle of that. And procedurally, I don't think it would have worked. At least the cases I was researching, it all tied in with liability of being resolved, and it was kind of like a bifurcated trial. You had to get the defendant's consent. So to answer that, that is why I did not go the editor route. But counsel said, you know, that Stacey Leese had a fair trial. Well, a fair trial is not necessarily a fair decision, and that's why we're here. But from counsel's argument, you kind of got the gist of everything. And I'm not looking to read them on Grove v. Wade here, but it's not a fetus. It's not a fetus under the Wrongful Death Act. It's a person. And that's, I think, the gist of why we're at $23,300. And under this particular statute, it's a person we're talking about with a long lifespan. Jurors are not infallible. They make mistakes. They swing and miss and they miss big. And the tone of the argument and the tone of the brief by opposing counsel is, well, you know, you win some, you lose some, you get some decisions for you, you get some against you. That's the way it goes. Sometimes you win, sometimes you lose. But, you know, this is not baseball where human error is a tradition and part of the game, and, you know, it's just something, oh, you can't blame the umpires. You know, when we're in the court system, it's more like the NFL. You want to get things right, and you get instant replay. And it's important that when a jury does make mistakes that they are called on, that people know that they're not infallible, that, yes, it is a jury and you have 12 people, but everything they decide is not always right. And sometimes they miss, and sometimes they miss big. And this is one of those cases. Counsel at the trial did bring up a lot of stuff about the boyfriends, that she only went out once or twice a month, though, after the accident. No husband in her life. Your Honor, I'm going to object to that. I think she said that one time, and there's nothing in the record to indicate that. We'll read the record, Counsel. And I think she also did bring out, though, in his cross-examination that he weighed 270 pounds. Well, you know, when you put it all together, what you have here is a woman who lives with her parents. She hasn't worked since the auto accident. She's been on social security disability since the auto accident. She has a high school education. She has no husband or father in her life, or baby's father in her life. A whole two boyfriends, and she goes out one time a month. She weighs 270 pounds. Did you object? When you look at it. Did you object at all? No, some of this was all testimony, Your Honor. I guess just to prove my point, some of this was brought in by me as just getting to know my client. Another was brought in by opposing counsel. When you look at this person, though, Stacy Lee, she's been in her life. You hate to sit here and say, oh, well, this person values her children more than others. But if any woman, the brutal truth of it is she's probably not going to have another baby. And if any woman needed this mother-child relationship with the baby that died, it's her under those circumstances. Her loss, looking particular at her, is great. And I think when you look at facts like these, I think that's where you're not going to have the slippery slope that counsel was arguing. Because so many of these cases are going to be based on what kind of people are we dealing with exactly. And you look at Stacy Lee exactly as I just laid out. I think her damage, her loss with her life relationship, much, much, much greater than $22,000. Although I can see I don't know exactly how much. Thank you. Thank you, gentlemen, for your arguments and briefs. Thank you, Madam Advisor.